Newland v. Baker.

---

## RACHEL NEWLAND v. E. P. BAKER.

OCCUPYING-CLAIMANT LAW, *When No Benefit of.* June 20, 1871, N. purchased from the state of Kansas a tract of school land, made two annual payments, and then defaulted. Subsequently the land was assessed for taxes, and sold therefor to the county. Thereafter B. paid to the county treasurer the full amount of the delinquent taxes, took an assignment of the sale certificate from the county, and then paid the balance due to the state school fund, and upon payment of this balance, received from the proper officers a patent for the land. B. thereupon brought an action of ejectment, and obtained judgment for the possession of the land. *Held,* That N. was not entitled to the benefit of the occupying-claimant law.

*Error from Wilson District Court.*

AT the May Term, 1881, of the district court, *Baker*, as plaintiff, had judgment against *Newland*, who brings the case here. The opinion states the facts.

*S. S. Kirkpatrick*, for plaintiff in error.

*Hutchings & Denison*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This case has been to this court once before, and is reported in 25 Kas. 25. As it then came to this court, it was an action of ejectment. The district court had found in favor of the defendant. Upon the facts, however, this court differed with the district court, reversed its judgment, and remanded the case, with instructions to enter judgment for the plaintiff. Thereupon, the defendant applied for the benefit of the occupying-claimant law. This application was submitted to the court under the following statement of facts:

Sometime in the year 1870, John Newland, now deceased, and his wife, Rachel Newland, defendant in this action, settled upon the tract of land in controversy, to wit, the east half of the southwest quarter, and the west half of the southeast quarter, of section sixteen, in township twenty-nine, south, of range seventeen, east, in Wilson county, state of Kansas, and proceeded to improve the same. Soon thereafter, in the same year, Newland filed in the local land office, then situated at Humboldt, Kansas, his declaratory statement under sec. 12, act of July 15, 1870, an act of congress providing for the sale of lands formerly occupied by the Great and Little Osage Indians, to actual settlers. Newland tendered the local land office the amount of money necessary under the act of congress aforesaid, and offered to make the necessary proofs, and demanded his certificate of entry, which was, by the local land office, refused, for the reason that the lands sought to be purchased were included within the grant

to the state of Kansas for the use of schools. Afterward, on the 20th day of June, 1871, John Newland contracted with the state of Kansas to purchase the lands mentioned, under the law making provision for the sale of school lands in the state of Kansas, and then and there made his first annual payment under said contract, and on the 20th day of June, 1872, made his second annual payment, and made no further payment under said contract thereafter. In the year 1873 the tract of land in dispute was assessed for taxation, and, being delinquent, was, on the 4th day of September, 1875, sold for the tax of 1874, and was bid in by the county treasurer for the county of Wilson. The land was also assessed for the years 1875 and 1876. Sometime in the year 1875 John Newland died, leaving his wife, Rachel, in possession of the premises in dispute. In the year 1876, Rachel Newland filed her declaratory statement under sec. 12, act of July 15, 1870, aforesaid, at the local land office at Independence, Kansas, and afterward tendered to the local land office the amount necessary to enter the land under the act of congress aforesaid. The local land office refused to accept her money, for the same reason that John Newland's money was refused at the local land office at Humboldt. On the 18th day of July, 1877, the plaintiff, E. P. Baker, a resident of the state of Iowa, paid to the treasurer of Wilson county the taxes levied on said land for the years aforesaid, with interest, penalties and costs, and took an assignment of the lands in dispute, and on the same day paid to the treasurer of Wilson county the principal and interest due the state on the contract of John Newland. Upon this payment being duly certified to the proper officers, a patent was issued to plaintiff by the state. And thereupon, defendant refusing to surrender possession, this action was brought.

The question now before us is, whether upon these facts defendant has any right under the occupying-claimant act. The district court held that she had not, and we think its ruling was correct. It will be borne in mind that at common law the owner of the title took all the improvements

made upon the estate. When he established his right to possession, it mattered not what improvements were made or upon what claim or color of title, they all belonged to him. Whenever it was adjudged that the title was in one party, it took not merely the land, but also all improvements by whomsoever put thereon. So, but for the occupying-claimant act, the moment title was adjudged in the plaintiff, that moment it carried to her not merely the land, but all improvements put upon it. The occupying-claimant act is an act in mitigation of the harsh rule of the common law, and being in the interests of equity, and not merely a statement but also an enlargement of the old rules of equity, it is, as counsel claims, to be liberally construed; but if when thus liberally construed, its provisions do not reach to the case at bar, there is no basis for any claim of the defendant for compensation for improvements. Now upon the facts stated, this land was school land; defendant's husband entered upon it believing it Indian land, and subject to sale; he attempted to purchase it from the United States; when informed that the United States did not have it for sale, but that it belonged to the state, he contracted for its purchase from the state; purchasing upon a contract for the payment at intervals, he made two annual payments, and then ceased to pay. Upon the basis of this contract for purchase, and the rights acquired thereby, his default in the payment of purchase-money, as well as in the payment of taxes, plaintiff's title rests. This may be looked at in one or two lights. In the one aspect the plaintiff's title is this: The defendant being in possession of school land, and having defaulted in payment, thereby forfeited to the state both land and all improvements thereon. (*The State v. Emmert*, 19 Kas. 546.) This right of the state to the land and improvements was transferred to the plaintiff, and in this aspect plaintiff's title was a derivative title, taking from the state that which it then had, the absolute right to the land and improvements. She took the same title that a voluntary grantee would, or a purchaser at a sheriff's sale. In another aspect of the case, she was a purchaser at a

tax sale, and the purchaser at a tax sale buys not merely the land, but all improvements upon it. Whatever is part of the realty is assessed as such, is taxed as such, and upon a sale for non-payment of taxes, is all sold as such. So that in whichever aspect of the case we may regard it, plaintiff had the right not merely to the land itself, but to all improvements on it. She was either subrogated to the state's right to all improvements made by a defaulting purchaser of school lands, or she was a purchaser at a tax sale, taking under such purchase both land and improvements. Under neither aspect can defendant find any relief in the occupying-claimant law, and hence the ruling of the district court must be affirmed.

All the Justices concurring.