Hentig v. Redden.

## A. J. HENTIG v. J. W. REDDEN.

GENERAL ASSIGNMENT; *Mistake; Notice; Tax Sale; Possession.* One P., residing in Indiana, was the owner of certain lots in the city of Topeka, in this state. Under the laws of Indiana, he executed a deed of assignment of certain real and personal property to one B., in trust for his creditors. He intended to convey thereby all of his real and personal property, and among other real estate, the lots owned by him in Topeka, but by mistake of the scrivener who prepared the deed, other lots in the city of Topeka, to which P. had no title, were inserted, and the lots intended to be conveyed were wholly omitted therefrom. The property transferred by P. to his assignee failed to pay the debts of his creditors, only fifty cents being realized by them on the dollar. Subsequently, P. conveyed the lots in Topeka, the title to which was in his name, to R., by quitclaim deed. Prior to this conveyance the deed of assignment had never been recorded in the office of the register of deeds of Shawnee county, in this state, nor any steps taken to correct the misdescription in the deed, or subject the lots to the possession of P.'s assignee. R. had no actual notice of the deed of assignment before his purchase. *Held,* That as between R. and one H., in possession of the lots under a tax deed founded upon an invalid tax sale, that R., as the holder of the legal title to the premises, is entitled to possession thereof, subject to H.'s lien for taxes, interest, and costs, and his rights as an occupying claimant.

### *Error from Shawnee District Court.*

ACTION in the nature of ejectment, brought October 1, 1883, by *Joseph W. Redden* against *A. J. Hentig* and others, to recover the possession of lots 408, 410, 412, and 414, on Clay street, in the city of Topeka, in this state. On November 1,

1883, Mrs. A. J. Hentig filed an answer, setting forth, among other things, as a defense —

"That one Jacob J. Puterbaugh, who is a resident of Logansport, Cass county, Indiana, and a citizen of said state of Indiana, is the pretended grantor to the plaintiff, Joseph W. Redden, of the real property described in his petition in this action, and that long prior to the date of the pretended conveyance of said real estate to said plaintiff, Redden, by Puterbaugh, to wit, on the 1st day of March, 1878, being then insolvent, the said Jacob J. Puterbaugh duly executed and delivered to one Thomas H. Brinkhurst — as assignee under the laws of the state of Indiana, for the benefit of creditors — a deed of assignment in writing of that date, and thereby conveyed all his real estate and personal property of every kind and nature to said Thomas H. Brinkhurst, who duly accepted said trust, and thereby became the owner of said real estate mentioned; to all of which proceedings and deed of assignment the said plaintiff had full knowledge before his said pretended purchase."

She also alleged in her answer that she was the owner and in the possession of the real estate in controversy, by virtue of a tax deed executed to her and filed by her for record, on September 30, 1882. She also set forth that she had made lasting and valuable improvements, of the amount of $2,000. Subsequently the plaintiff filed a reply, alleging, among other things, that the tax deed failed to invest the defendant, A. J. Hentig, with any title, because it was issued upon a voidable sale. The defendant, F. G. Hentig, also filed a separate answer, containing a general denial. First trial on October 1, 1884, and judgment was entered in favor of the defendant. This judgment was vacated, and a new trial granted as provided for by § 599 of the code. The second trial was had on February 18, 1885, before the court, a jury being waived. The presiding judge, Hon. John Guthrie, having been interested in the case, by agreement of the parties Hon. John Martin was selected as judge *pro tem.* to try the cause. No special findings of fact were requested by either party, but the court made the following findings:

"1. At the commencement of this action, the plaintiff, J. W. Redden, was the owner in fee simple of lots 408, 410, 412

and 414, on Clay street, in the city of Topeka, Kansas, and is such owner now, and that all the material allegations in his petition are true.

"2. A. J. Hentig is in the possession, under two tax deeds, one recorded May 9, 1877, and the other recorded September 30, 1882, both issued on the tax sale of 1874 for the taxes of 1873.

"3. Such tax sale is void, because there was an unlawful combination of bidders at the sale, which prevented competition, and the sale was made for illegal taxes and illegal costs charged against the lots.

"4. The taxes paid by the Hentigs on lots 408, 410, 412, 414, 416, 418, which adjoin and are one tract, and which were assessed and sold as one piece of land, including penalties, costs, and interest at 50 per cent. from the payments up to the 9th of May, 1877, when the first tax deed was executed, and then 20 per cent. on that sum and on all subsequent taxes, with the subsequent taxes, amounting to $258, up to the day of trial, February 18, 1885, and counting the same sums at 50 per cent. on said taxes on said six lots up to the 30th of September, 1882, when the second tax deed was executed, and then 20 per cent. on that amount, and the subsequent taxes — the total sum with said amounts of interest is $401.67; and on the four lots in controversy, being two-thirds of the said six lots, the taxes are $267.78, and are a lien on said four lots, viz.: Nos. 408, 410, 412, and 414, on Clay street, in the city of Topeka."

Judgment was entered that the defendants surrender the possession of the lots in controversy to the plaintiff, subject to the payment to Mrs. A. J. Hentig of the taxes, interest and costs, amounting to $267.78, and also subject to Mrs. A. J. Hentig's rights as an occupying claimant. Costs were adjudged against the defendants. To the rulings and judgment of the court *Mrs. A. J. Hentig* excepted, and brings the case here.

*F. G. Hentig*, for plaintiff in error.

*H. H. Harris*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by Joseph W. Redden against Mrs. A. J. Hentig and others, in the nature of

ejectment, for the recovery of lots 408, 410, 412, and 414, on Clay street, in the city of Topeka. Upon the final trial, the case was submitted to the court below, without a jury, and the court rendered judgment in favor of the plaintiff and against the defendants, preserving however to the defendant, Mrs. A. J. Hentig, the taxes paid by her upon the lots, with interest and costs, and her rights as an occupying claimant.

. The first question is, whether the judgment rendered in favor of the plaintiff below is correct. It appears from the record that on August 20, 1869, the title to the lots in controversy was in T. P. Rodgers and A. K. Rodgers. On October 7, 1870, T. P. and A. K. Rodgers conveyed, by warranty deed, the lots to Jacob J. Puterbaugh, of the city of Logansport, state of Indiana. On August 22, 1883, Jacob J. Puterbaugh and wife conveyed by quitclaim deed the lots to Joseph W. Redden, the consideration for the conveyance, recited in the deed, being $120, although Redden testified upon the trial that he paid $225. After the lots had been conveyed to Puterbaugh by the Rodgerses, and prior to the conveyance to Redden by Puterbaugh, and on March 1, 1878, Puterbaugh executed, under the laws of Indiana, a deed of assignment of certain real and personal property to James H. Brinkhurst, in trust for the benefit of creditors Puterbaugh intended in such assignment to convey all of his real and personal property, and among other real estate, the lots in dispute, but by mistake of the scrivener other lots in the city of Topeka, to which Puterbaugh had no title, were inserted in the deed of assignment, and lots 408, 410, 412, and 414, on Clay street, were therefore wholly omitted. The property transferred by Puterbaugh to his assignee, Brinkhurst, failed to pay the debts of the creditors, only fifty cents on the dollar being realized by them for such purpose. Prior to the conveyance by Puterbaugh and wife to Redden, the deed of assignment had never been recorded in the office of the register of deeds of Shawnee county, nor any steps taken to correct the misdescription in the deed, or to subject the lots conveyed to Redden to the possession of Brinkhurst, the assignee of Puterbaugh.

Under the findings of the court, we must also assume that Redden had no notice of the deed of assignment before his purchase. The evidence on this point is conflicting, but upon the findings and judgment, it is clear that the court decided that Redden acted without notice. As Mrs. A. J. Hentig, in possession of the property, claimed under a tax deed, adverse to Puterbaugh, and also to Brinkhurst, his assignee, her possession would not put Redden upon notice of the deed of assignment. There was sufficient evidence presented to the trial court to sustain the finding that the tax sale of 1874, upon which the tax deed was issued, was invalid, and therefore, if Redden was entitled to recover upon his title, Mrs. Hentig can only be protected to the amount of taxes and charges paid by her, with interest thereon, and as an occupying claimant.

*Assignment; mistake; notice; tax sale; possession.*

On the part of Mrs. Hentig it is insisted that Redden cannot be regarded as a purchaser in good faith, for the reason that he holds under a quitclaim deed. Therefore it is insisted that he is charged with notice of all the equities of Brinkhurst, the assignee of Puterbaugh. On the part of Redden it is urged that a quitclaim deed is as effectual to convey title as one with general warranty, and that there is no distinction between a quitclaim and a warranty deed, as affecting the holder with notice, or putting him on inquiry. The authorities are conflicting, whether a quitclaim deed gives one who claims under it the rights of a *bona fide* purchaser without notice. That it does, see Martindale on the Law of Conveyancing, §§ 59, 285; *Graff v. Middleton,* 43 Cal. 341; *McConnell v. Read,* 4 Scam. (Ill.) 117; *Fash v. Blake,* 38 Ill. 363; *Bradbury v. Davis,* 5 Col. 265; *Chapman v. Sims,* 53 Miss. 154. That it does not, see *Baker v. Woodard,* 6 Pac. Rep. 173; *Gress v. Evans,* 1 Dak. 387; *Hoyt v. Schuyler,* 28 N. W. Rep. 306; *Oliver v. Piatt,* 3 How. (U. S.) 333; *Marshall v. Roberts,* 18 Minn. 405; *May v. Laclaire,* 11 Wall. 217; *Rodgers v. Burchard,* 34 Tex. 441; *Springer v. Bartell,* 46 Iowa, 688; *Stoffel v. Schroeder,* 62 Mo. 147; *Battershall v. Stevens,* 34 Mich. 68;

*Nash v. Bean,* 74 Me. 340; *Richards v. Snyder,* 6 Pac. Rep. 186.

This question, so forcibly discussed in the briefs, need not, however, be decided; and therefore we purposely refrain from expressing our opinion at this time thereon.

All of the authorities agree that a purchaser under a quitclaim deed takes such interest or title in the premises conveyed as the grantor may lawfully convey, and therefore acquires by such a deed all the rights that the grantor had in the premises at the time of the conveyance. On August 22, 1883, when Puterbaugh and wife executed their conveyance to Redden, Puterbaugh had the legal title to the premises conveyed. This title, at least, Puterbaugh transferred and conveyed to his grantee, Redden. As the holder of the legal title, Redden had a better right to the possession of the premises than Mrs. A. J. Hentig, claiming under a tax deed not barred by the statute of limitations, and founded upon an invalid tax sale. Mrs. Hentig does not represent Brinkhurst, the assignee of Puterbaugh, nor the creditors of Puterbaugh. Her interest, if any, is wholly adverse to all of these parties. On the other hand, if neither Brinkhurst, the assignee of Puterbaugh, nor the creditors of Puterbaugh, choose to disturb Redden in his title, the latter's title is conclusive against the world.

Again, the action of Redden, if it be conceded that he cannot be called a *bona fide* purchaser under his quitclaim deed, is not adverse to the interests of Brinkhurst, the assignee of Puterbaugh, or the creditors of Puterbaugh. If they are the equitable owners of the property—which we do not decide—their interests are much better protected by the possession of the premises being given to Redden, as the holder of the legal title, than to Mrs. Hentig, under a tax deed which might, perchance, by possession, ripen into a perfect title. The question whether a purchaser who takes by a quitclaim deed is affected by prior equities, might become material in an action between Brinkhurst, the assignee of Puterbaugh, and Redden, but does not arise in this case, between Mrs. Hentig and Redden. Here, notice of prior equities is wholly unimportant.

If Puterbaugh had never executed the conveyance to Redden, he would be entitled to recover, as against Mrs. Hentig, possession of the lots, subject, of course, to her lien for taxes, etc., if neither his assignee, nor his creditors, intervened or objected. Such a proceeding would assist in protecting the estate assigned for the benefit of the creditors; would also strengthen the equities of Brinkhurst, the assignee; and would not prejudice the rights of any creditor.

Redden has filed a cross-petition, asking the judgment to be so modified as to reduce the amount of taxes, interest and costs to $100. The record purports to contain all of the testimony produced upon the trial. The only evidence in the record of the payment of taxes is embraced in two tax deeds. One tax deed is dated May 9, 1877, and the other tax deed is dated September 30, 1882. According to our computation, allowing interest at fifty per cent. to the date of the first tax deed, the evidence shows only $86.51 as a lien for taxes, charges, etc. If, however, Mrs. Hentig is allowed fifty per cent. to the date of the tax deed of September 30, 1882, according to our computation only $109.48 is to be repaid for taxes, etc. If Mrs. Hentig claims as an occupying claimant, or otherwise, under the first tax deed recorded by her, she can only claim interest at fifty per cent. upon the taxes paid by her to the date of that deed, and twenty per cent. thereafter. If, however, she has waived all rights which might otherwise be claimed under the first tax deed, she will be entitled to the full amount of all taxes paid on such lands, with interest at fifty per cent. and costs as allowed by law up to the date of the second tax deed, including the costs of such deed and the recording of the same, with interest on such amount at the rate of twenty per cent. per annum, after the date of said deed, together with all subsequent taxes paid by her, and interest thereon at the rate of twenty per cent. per annum. (Comp. Laws of 1879, ch. 107, § 142.)

As the evidence does not support the amount of the lien for taxes, charges, etc., which Redden was adjudged to pay to Mrs. Hentig, that finding must be set aside.

The judgment rendered in favor of Redden and against the Hentigs, that they surrender the possession of the lots described in the petition, will be affirmed; but the case will be remanded to the district court for further hearing as to the amount of taxes, charges, etc., which Redden must pay before he shall be let into possession.

All the Justices concurring.