A. J. HENTIG v. EMMA REDDEN *et al.*

1. SUPREME COURT—*Transfer of Case to Another Court.* A party has no such vested right to a hearing by the supreme court of a case pending therein as will prevent the legislature from providing for a transfer of such case to another competent appellate tribunal.

2. OCCUPYING-CLAIMANT LAW, *to be Equitably Construed.* The occupying-claimant law is based upon the broadest equity and must be construed so as to effect an adjustment of the rights of the respective parties in the most equitable manner; the unsuccessful occupying claimant should be compensated for the full added value which his lasting and valuable improvements give to the land at the time such value is assessed, and he should be charged only with value of the rents and profits of the land exclusive of the improvements.

3. INVALID TAX DEED—*Portion of Taxes to be Repaid.* When the defendant in an action of ejectment bases his claim of title on a tax deed which is adjudged invalid, and he is entitled to be repaid the taxes paid by him, as well as to have the benefit of the occupying-claimant act for his improvements, only such portion of the taxes paid should be repaid to him as were levied upon the assessed valuation of the land without the improvements for which compensation is made.

MEMORANDUM.—Error from Shawnee district court; JOHN GUTHRIE, judge. Application for the benefit of the occupying-claimant law, made by A. J. Hentig in the case of J. W. Redden against A. J. Hentig. Judgment for plaintiff. The defendant brings the case to

this court. Reversed. All the material facts are stated in the opinion, filed September 18, 1895.

*F. G. Hentig*, for plaintiff in error.

*Redden & Schumacher*, for defendants in error.

The opinion of the court was delivered by

GARVER, J. : This case comes with a familiar face into the appellate courts, having been before the supreme court at three different times prior to this, leaving its impress upon the records in 35 Kas. 473, 38 Kas. 500, and 45 Kas. 20.

The defendants in error urge upon the court a motion to dismiss on the ground that the defects in the record forbid a consideration of the assignments of error. We think the record is sufficient to present fairly the rulings of the district court of which complaint is made : the instructions to the jury, the findings of fact, and the judgment, all being consistent with one another and clearly showing that the matters alleged as error entered into each of them. While the record should be full and complete concerning the questions to be reviewed, we will not encourage any unnecessary prolixity or burdensome additions of irrelevant details of the trial. Objection is also made to the jurisdiction of this court, for the reason, as stated by counsel, that, as the case was filed and pending in the supreme court when the act creating the courts of appeals took effect, the parties had a vested right to a final hearing in the former court which the legislature could not disturb.

We do not think the objection is valid A party has no such right to a hearing in a particular tribunal as will prevent the legislature from providing for a transfer of his case to another competent court. This

question was very fully considered in *Branson v. Studebaker*, 133 Ind. 147, Elliot, J., saying :

"There is no vested right in a remedy or in a tribunal. Remedies and tribunals may be changed by substitution without impairing vested rights. It may be granted that a remedy cannot be entirely swept away or rendered utterly ineffective by the destruction of a tribunal ; but granting this will not authorize the conclusion that the substitution of the appellate court, in a class of cases falling within a limited jurisdiction, impairs a vested right, for parties have still a remedy and still a competent tribunal to administer that remedy."

That decision was cited with approval, and the proposition now presented decided against the contention of defendants in error by the supreme court of this state in the case of *Roe v. Comm'rs of Elk Co.*, recently certified by that court to the southern department of the courts of appeals.

The errors assigned all depend upon the proper construction of the statute known as the occupying-claimant act. The plaintiff in error, Hentig, was defendant in an action of ejectment brought against her by J. W. Redden, for the recovery of the possession of four lots in the city of Topeka, in which judgment was rendered for Redden. Hentig was recognized as an occupying claimant, with lasting and valuable improvements made by her previous to the commencement of the ejectment suit. On the trial of her rights as occupying claimant, the district court held that, as against the assessed value of the improvements, the plaintiff was entitled to the rents and profits which the defendant may have received from the lots and improvements. The present controversy is upon the construction of the occupying-claimant act, the plaintiff in error claiming that the rents and profits recoverable should

Hentig v. Redden.

not be augmented by taking into consideration the added value given thereto by the buildings erected on the lots by her, while the defendants in error contend that the rents and profits must be estimated upon the lots in their improved condition.

The several issues made by the pleadings in this case have apparently been taken up by sections, and a number of separate and distinct trials had of what should have been disposed of at the same time. It thus happens that, notwithstanding much of the controversy has arisen under the occupying-claimant law, the appellate court is now, for the first time, called upon to construe that act. Neither party is blameless for this situation, for the proceedings under the statute might have been instituted and forced to a conclusion by the plaintiff, as well as by the defendant. Since the amendment in 1873 of the occupying-claimant act, the unsuccessful occupying claimant is protected in the possession of the disputed premises, until paid the value of his lasting and valuable improvements; so that it seems to be as essential for the plaintiff in ejectment, to entitle him to actual possession, to satisfy the claim of the defendant for his improvements as it is for him to sustain his own claim of title. (Gen. Stat. of 1889, ¶ 4704; *Sarbach v. Newell*, 28 Kas. 642.) Consequently, little weight can be given to the complaint of the defendants in error because of this protracted litigation for which both parties are responsible. This statute shows the highest consideration for the unsuccessful occupying claimant, and evinces the greatest solicitude in providing for an adjustment of his rights as the possessor of the improvements, upon the most liberal principles of equity. At common law the legal owner took everything; the lasting improvements going with the

title as a mere incident to the land. The good faith of the occupant counted for nothing. Eviction followed judgment for possession, however ruinous the consequences. Equity, refusing to follow so harsh a rule, allowed the defeated occupant to set off the value of the lasting improvements made by him against the owner's claim for rents and profits, but limited the allowance for the improvements to the amount of the rents and profits. (*Bright v. Boyd*, 1 Story, 478; *Putnam v. Ritchie*, 6 Paige, 404; *Parsons v. Moses*, 16 Iowa, 444; *Newland v. Baker*, 26 Kas. 341; *Barton v. Land Co.*, 27 id. 634.) The occupying-claimant act provides not only for the enforcement of this rule of equity, but goes further by saying that full compensation must be made to the owner of the improvements before his possession can be disturbed. There is a clear and expressed recognition of interest in and ownership of the premises in their improved condition in common by the owner of the land and the owner of the improvements. It is optional with the successful claimant whether he ever becomes the owner of the improvements. He may elect to take the assessed value of the land, without the improvements, and execute a deed of conveyance to the occupant. (¶ 4713.) In that event, the occupant, upon payment of the value of the land, becomes the legal owner of both land and improvements : the owner of the land never acquires any interest in the latter. If such election be not made by the owner of the land, he must pay the assessed value of the improvements before he can claim possession of and right of ownership in them. Who will, in the end, be owner of the improvements is not determined until after there has been an assessment of their value, as well as of the value of the rents and profits. Such is

our interpretation of the letter and spirit of the statute under consideration : its whole aim and purpose being to give to each one, as nearly as possible, his own. That this end may be attained, it is the duty of the court, in any case, to give to the law a liberal construction, and apply it upon the broadest principles of equity. (*Stebbins v. Guthrie*, 4 Kas. 353 ; *Newland v. Baker*, 26 id. 341.)

When the defendant took possession of the premises they were naked city lots. She erected on them three small dwelling-houses, and made other improvements, all valued, at the time of the trial, at $418, though they probably had originally cost a considerably larger sum. The annual rental value of the naked lots was trifling, perhaps not to exceed $5, while the annual rental value of the lots in their improved condition was found to be $120. The total value of the rents and profits of the land and improvements received by the defendant from the time of the commencement of the action until the trial, and with which she was charged, was $928.67—not to exceed $50 of which was the value derived from the naked lots. Is the successful claimant entitled to this entire sum? We think not. In such a proceeding, the occupant is not repaid for his actual expenditures made upon the premises. The improvements must be valued only according to the added value they give the land. However costly they may have been, unless they add actual value to the land at the time the assessment is made, they are valueless to the occupying claimant, and he goes out empty-handed. By him is borne all the depreciation of value from use, or otherwise, as well as loss from the total destruction of buildings during the pendency of the action. The jury assesses values on a present view, and fixes them, of necessity, as of the time when

the view is had; the successful claimant being required to pay only the added value which he acquires upon eviction.   (*McMurray v. Day*, 70 Iowa, 671; *Fletcher v. Brown*, 35 Neb. 660; *Nixon v. Porter*, 38 Miss. 416; 2 Story, Eq. 799; 3 Suth. Dam. 349, 350.)

The construction contended for by counsel for defendants in error puts upon the unfortunate occupant, who has made lasting improvements upon the strength of his defective title, a double loss.   He not only loses the difference between his expenditures and the actual added value given to the land by his improvements, but he is made to pay interest on such expenditures, in the way of rents.   The mere statement of the proposition is sufficient to convince anyone of its utter lack of equity; and, unless the statute clearly so requires, a construction will not be adopted which would enforce so unjust a rule.   The language of the statute is, the jury —

" Shall also assess the damages, if any, which said land may have sustained by waste, together with the net annual value of the rents and profits which the occupying claimant may have received from the same, after having received notice of the plaintiff's title by service of summons."

If this must be held to mean rents and profits of the land and improvements, simply because permanent improvements become a part of the real estate upon which they are placed, the same argument would require the occupying claimant to be assessed with the damages which the premises may have sustained by waste that consists in injury to buildings erected by him.   So that, in the matter of waste, there would exist the anomalous condition of requiring him to pay the damages done to the improvements, whether it be partial or total destruction, and, at the same time, only allow him for the value of the improvements in

their depreciated condition. It will hardly be claimed that an occupying claimant can in that manner commit waste for which he is chargeable; but to this result the argument of counsel logically leads, the property involved being "*the same.*"

In *Dietzler v. Wilhite,* 40 Pac. Rep. 272, recently decided by the supreme court of this state, Mr. Justice ALLEN very cogently expressed the views of that court upon the equity of this proposition, as applied to rents prior to the commencement of the action, in the following language, which is equally apt in this case :

"We think the provisions of the occupying-claimant's law in accordance with sound equitable principles, and that no reason can be found in ethics why the occupying claimant should not have the full value of his improvements, as well when the value exceeds the mense profits as when it does not. The substance of the plaintiff's claim is not merely that she is entitled to the value of the use and occupation of her property, the bare lot, which the court finds was $1 per year, and concerning which the plaintiff makes no complaint, but she claims the rental value of the house constructed by the defendant, which in equity and good conscience never was her property at all. The equity, the ethics, of such a claim finds no favor with us. On the contrary, we think the claim grossly inequitable. The defendant's money paid for the improvements. No allowance could be made for interest on his investment, but he has had the use of it. We know of no sound reason why one should be charged for using his own property, no matter what the form of action may be."

Both upon the better reason and ample authority, we are of the opinion that when the occupant of real estate shows himself entitled to the benefit of the occupying-claimant act for his improvements, the assessment against him under that act for rents and profits should be made exclusive of the added value given

them by his improvements.   Supporting this conclusion are the following cases :  *Elliot v. Armstrong*, 4 Blackf. (Ind.) 591 ;  *Pacquette v. Pickness*, 19 Wis. 241 ; *Dugan v. Van Phul*, 8 Iowa, 268 ;  *Dean v. Feely*, 69 Ga. 822 ;  *Haskins v. Spiller*, 3 Dana, 573 ;  *Pugh v. Bell*, 27 B. Mon. 125 ;  *Oil Co. v. Henshaw*, 7 S. Rep. (Ala.) 760 ; *Sarbach v. Newell*, 28 Kas. 642.

We do not think, as claimed by counsel for the defendant in error, that the supreme court, in *Dietzler v. Wilhite*, to which reference has been made, has placed a construction on the statute in question not in accord with the views expressed in this opinion.   True, in that case, the court below allowed for the rents and profits of the land and improvements.   No complaint, however, was made of that ruling, and the supreme court did not pass upon its correctness, and was not called upon to do so.   We do not read the opinion of the court, as delivered by Mr. Justice ALLEN, to mean that the court approved of that ruling as a correct application of the statute.

It is also objected that, as the defendant below held under a defective tax deed, and was entitled to be repaid the taxes paid by her with interest, it would be unjust to allow the amount of the taxes to be increased by the greater value given to the property by the improvements and not assess the rental value of the property in like condition.   The record does not disclose in what manner the amount of the taxes paid was estimated.   The questions affecting the payment of taxes, rents and profits, and value of improvements, should all have been disposed of by the court at the same time, all being matters which regularly follow the judgment for possession, and are to be adjusted upon equitable principles before the defendant is dispossessed.   The tax laws provide for a separate assess-

ment of the value of lands and the improvements thereon for the purpose of taxation; and there is no difficulty in this case in ascertaining the amount of taxes paid by Hentig on these lots exclusive of the improvements. Only the amount so paid should, with interest and legal charges, be repaid to her. The taxes paid on improvements should be held to be paid on her own property, of which she had the full use and benefit. If, in the piecemeal trial of this case, there has been a repayment to the defendant of a greater sum for taxes than she is equitably entitled to, upon the final hearing and adjustment of the respective rights of the plaintiff and defendant, that portion of the amount repaid which represents the taxes on the improvements should be taken as a payment to that extent on assessed value of the improvements. In no other way can complete equity be done. In an adjustment of the rights of parties under the occupying-claimant law, the following general rules should be observed as nearly as possible : (1) In assessing the value of lasting and valuable improvements, the jury should consider and find only the added value which the improvements so made give to the land at the time the premises, are viewed, or when the successful claimant obtained possession. (2) Damages for waste should be assessed with reference to the condition of the premises at the time they came into the possession of the defendant, or into the possession of those through whom he claims. (3) The net annual value of the profits charged against the occupying claimant should be estimated upon the use of the land without the improvements for which compensation must be made. (4) The occupying claimant should have credit for only such portion of the taxes paid by him, during his occupancy, as were paid upon the land without his improvements.

As there was no assessment of the rental value of the lots without the improvements, this court cannot determine what judgment should be entered.    The judgment will be reversed, and the case remanded for a new trial in accordance with this opinion.

All the Judges concurring.